IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS W. DAVIES, NOW       :
DECEASED, BY AND THROUGH HIS  :
WIFE, MAJORIE A. DAVIES,        :
ADMINISTRATOR OF HIS ESTATE,  :
                                 :
         Plaintiff,          :
v.                         :    **3:15-cv-1183**
                                 :    **(JUDGE MARIANI)**
LACKAWANNA COUNTY, et al.,    :
                                 :
        Defendants.      :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court for judgment is the retaliation claim of Plaintiff, Thomas

W. Davies, by and through Majorie Davies, the administrator of his estate, against

Defendants Lackawanna County and Sheriff Mark McAndrew. Mr. Davies, a former deputy

sheriff for Defendant Lackawanna County, filed this lawsuit on June 16, 2015, alleging

various constitutional violations and discrimination claims for failure to accommodate and

retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and

the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 951, *et seq.* Doc. 30. On

February 20, 2018, a four-day jury trial on all of Davies' claims except the retaliation claim

was held.[1] On February 23, 2018, the jury returned verdicts for Defendants on the

---

[1] At the end of Plaintiff's case-in-chief, the Court granted Defendants' motions for judgment as a matter of law on the seizure claim pursuant to the Fourth Amendment and the due process claim pursuant to the Fourteenth Amendment. Consequently, the only claims submitted to the jury were the violation of

constitutional claims and the failure to accommodate claim pursuant to the ADA and PHRA. Doc. 144. Upon review of the evidence and testimony of record, the Court finds that Davies has failed to prove the retaliation claim pursuant to the ADA and PHRA. For the reasons set forth below, the Court will enter judgment on Plaintiff's retaliation claim in favor of Defendants Lackawanna County and Sheriff Mark McAndrew, and against Plaintiff, Thomas W. Davies.

## II. ELEMENTS OF PROOF

To prevail on a claim for retaliation under the ADA, Plaintiff must show: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997)).

## III. FINDINGS OF FACT

1. From 2014 to 2015, Mr. Davies was a part-time sheriff deputy at Lackawanna County Sheriff's Office. (Doc. 30; Davies Trial Test.)

2. During the time of Mr. Davies' employment, the Sheriff of Lackawanna County was Defendant Mark McAndrew. (Doc. 30; McAndrew Trial Test.)

---

privacy claim, the *Monell* claim against Lackawanna County for the alleged violation of privacy, and the discrimination claim based on failure to accommodate pursuant to the ADA and PHRA.

3. On May 15, 2015, Mr. Davies showed up for work, but left early after informing his supervisors, Chief Deputy Sheriff James Boland and Sergeant John Acculto, that he needed to leave early to care for his wife. (Davies Trial Test.; Boland Trial Test.)

4. On May 15, 2015, Mr. Davies received permission from Chief Boland to leave work early to care for his wife. Mr. Davies did not inform his supervisors that he was leaving early because of his diabetes. (Davies Trial Test.; Boland Trial Test.)

5. After Mr. Davies left work, he drove to a store to pick up dinner for him and his wife. He then stopped at a field near Lithia Valley Horse Farm. (Davies Trial Test.)

6. While in the field, Mr. Davies sent a text message to coworker Bryanna Gifford, stating: "Dear Bryanna[,] I would like to call you but I know you are at the front doors. This is for your eyes only. You will never see me again, thanks for being my friend." When she asked for clarification, he replied "I am sitting in a field up by my home. You guess what's next?" When Ms. Gifford asked for further clarification, he replied: "It's called death." (Davies Trial Test.; Ex. DA-17)

7. Based on the text message, Deputy Gifford believed that Mr. Davies was suicidal and reported the text message to Chief Deputy Boland. (Acculto Trial Test.; Boland Trial Test.)

8. Following the text message, Sergeant Acculto, Sergeant Oakey, Corporal Callahan, and Deputy Rivera went to look for Mr. Davies. (Acculto Trial Test.; Davies Trial Test.; Boland Trial Test.; Callahan Trial Test.; and Oakey Trial Test.)

3

9. Sergeant Acculto, Sergeant Oakey, Corporal Callahan, and Deputy Rivera found Mr. Davies in the field, and accompanied him back to his home. At his home, Mr. Davies changed out of his uniform and was voluntarily transported to Tyler Memorial Hospital by ambulance. (Acculto Trial Test.; Davies Trial Test.)

10. According to medical records from Tyler Memorial Hospital from May 15, 2015, Mr. Davies was eligible to return to work on May 19, 2015 with no restrictions. (Ex. P-5)

11. According to medical records from Tyler Memorial Hospital from May 15, 2015, Mr. Davies had diabetes, and had been taking medication for his diabetes. (Ex. DA-10)

12. On May 18, 2015, the Lackawanna County Sheriff's Office issued Mr. Davies a notice of charge regarding his "attendance at work, specifically about [his] demonstrated pattern of leaving work before [his] shift is completed" and informed him that he is to appear for a hearing on May 22, 2015 to discuss the issues. The notice advised Mr. Davies that after the hearing, "the Sheriff may impose discipline up to and including termination of [his] employment." (Ex. DM-6)

13. Prior to May 15, 2015, Mr. Davies has left work early on at least two occasions. (Boland Trial Test.; McAndrew Trial Test.; Acculto Trial Test.)

14. After one of the occasions when he left a work shift early, the Sheriff's Office sent Mr. Davies a letter memorializing a verbal warning because Mr. Davies left his shift after "failing to first speak to a supervisor." The letter was issued after a hearing held

on June 19, 2014 to discuss the same incident. The notice also stated that "further incidents may result in discipline, up to and including termination." (Ex. DM-25).

15. Sheriff McAndrew testified that he made the decision to conduct a hearing regarding Mr. Davies' attendance because the events of May 15, 2015 demonstrated yet another occasion when Mr. Davies left work earlier than his shift was scheduled to end, and because the purported reason for his leaving early that day, i.e. to care for his wife at home, turned out to be not the case, as Mr. Davies texted Deputy Bryanna Gifford that he was sitting in a field after he left work, and his coworkers found him in the field, not at home. (McAndrew Trial Test.)

16. On May 20, 2015, Mr. Davies, through his attorney Cynthia Pollick, sent a letter to Lackawanna County advising the County that he suffers from diabetes, requesting an accommodation of "being allowed to leave when he has an episode related to that medical condition," and stating that he "asked to leave early on Friday, May 15, 2015, because of his health condition." (Ex. DM-7). According to Plaintiff's Fourth Amended Complaint, the letter was sent after Mr. Davies' hired attorney Pollick. See Doc. 30 ¶ 39 (stating that "[o]n or about May 20, 2015, after hiring a lawyer, Plaintiff requested a reasonable accommodation from Defendants to be allowed to have time off if needed to treat for his medical condition of diabetes").

17. Prior to May 20, 2015, Mr. Davies has never requested an accommodation due to his diabetes during his employment with Lackawanna County. (Davies Trial Test.)

5

18. On May 22, 2015, Mr. Davies was provided a revised notice of charge prior to the hearing that was scheduled to take place. The notice stated that the hearing will address Mr. Davies' "unreliable and deficient attendance at work and dishonesty." (Doc. 30 ¶ 50; Ex. DM-8).

19. Mr. Davies' hearing proceeded as scheduled on May 22, 2015, for which Mr. Davies, his union representative, Sheriff McAndrew, attorney for the County Lawrence Moran, and others were present. (Davies Trial Test., McAndrew Trial Test.)

20. On May 27, 2015, Sheriff McAndrew sent a letter to Mr. Davies and his attorney, terminating Mr. Davies employment with the Lackawanna County Sheriff's Office "because [he has] demonstrated unreliable and deficient attendance at work, and because [he has] demonstrated dishonesty toward [his] superiors and colleagues." The letter specifically addressed the May 15, 2015 incident, stating that while Mr. Davies announced he was leaving early because he was "leaving to care for [his] ailing wife," he admitted at the May 22, 2015 hearing that he did not "leave [his] May 15, 2015 shift to care for [his] wife, but instead left for other reasons not previously disclosed to [his] superiors." The letter also noted that Mr. Davies had been disciplined for "unreliable and deficient attendance at work in the past," and that he had "failed to heed the verbal and written warnings [he] received on those occasions." (Ex. DM-9).

21. At trial, Sheriff McAndrew testified that he made the decision to terminate Mr. Davies after the May 22, 2015 hearing, because of Mr. Davies' pattern of having left work early on more than one occasion, and because Mr. Davies had not been truthful when he asked to leave work early on May 15, 2015. (McAndrew Trial Test.)

22. On June 16, 2015, Mr. Davies filed this lawsuit alleging, among other claims, discrimination for failure to accommodate his disability (i.e. his diabetes) and retaliation for requesting the accommodation. (Doc. 30)

23. On February 20, 2018, a four-day jury trial on all of Davies' claims except the retaliation claim was held. On February 23, 2018, the jury returned verdicts for Defendants on all claims submitted to them, including the failure to accommodate claim under the ADA and PHRA. With respect to the failure to accommodate claim, the jury found that Mr. Davies did not suffer from "a disability that was known to Lackawanna County and/or Defendant McAndrew, or was 'regarded as' having a disability by the defendants, within the meaning of the Americans with Disabilities Act." (Doc. 144)

## IV. CONCLUSIONS OF LAW

1. Plaintiff proved by a preponderance of the evidence the first and second element of an ADA retaliation claim: that Mr. Davies engaged in protected activities under the ADA, and that a materially adverse action occurred "after or contemporaneous with the employee's protected activity." *Fogleman*, 283 F.3d at 567. Specifically,

documentary evidence shows that Mr. Davies requested a workplace accommodation for his diabetes on May 20, 2015, and that he was terminated on May 27, 2015. (Findings of Fact, *supra*, ¶¶ 16, 20).

2.  It is the third element that is at issue in Plaintiff's retaliation claim, namely, whether there was a "causal connection between the employee's protected activity and the employer's adverse action." *Fogleman*, 283 F.3d at 567-68.

3.  At the outset, the Court adopts the jury's finding that Mr. Davies did not suffer from "a disability that was known to Lackawanna County and/or Defendant McAndrew, or was 'regarded as' having a disability by the defendants, within the meaning of the Americans with Disabilities Act." (Doc. 144) Additionally, the Court notes that there were no medical records nor lay or expert witness testimony introduced at trial that indicated Mr. Davies' diabetes was an impairment that substantially limited any major life activities, including the activity of working as a sheriff at the Lackawanna County's Sheriff's Office.

4.  The Court finds that the evidence adduced at trial is not sufficient to prove a causal connection between Mr. Davies' termination and his request for accommodation for his diabetes. The undisputed documentary evidence shows that Mr. Davies received the notice for a hearing to discuss his "pattern of leaving work before [his] shift is completed" on May 18, 2015. The notice advised Mr. Davies that termination may be a possible consequence following the hearing. (Findings of Fact, *supra*, ¶ 12)

5. It was not until Mr. Davies received this notice that his attorney sent a letter to Lackawanna County, two days after receiving the notice, requesting an accommodation for his diabetes. (Findings of Fact, *supra*, ¶¶ 12, 16)

6. During his deposition, which was read at trial and admitted as trial testimony, Mr. Davies conceded that he has never asked for an accommodation for his diabetes prior to May 20, 2015, and that he did not inform his supervisors when he left early on May 15, 2015 that he was leaving due to his diabetic condition. (Findings of Fact, *supra*, ¶¶ 4, 16, 17)

7. The Court credits the testimony of Sheriff McAndrew, who stated that he made the decision to terminate Mr. Davies after the May 22, 2015 hearing for his attendance issues, and because Mr. Davies had not been forthcoming about the reason he left work early on May 15, 2015. (Findings of Fact, *supra*, ¶¶ 15, 21).

8. The Court also credits McAndrew, Boland, and Acculto's testimony regarding Mr. Davies' attendance issues, which included two prior occasions when he left a work shift early, one of which resulted in a June 19, 2014 hearing regarding his leaving work early without notifying a supervisor, as well as a follow-up letter advising him that "further incidents may result in discipline, up to and including termination." (Findings of Fact, *supra*, ¶¶ 13, 14).

9. The Court finds that the disciplines that Mr. Davies received prior to and including his termination were issued for proper cause and were not the result of any retaliatory

motive. Plaintiff has not offered any evidence rebutting the fact that Mr. Davies had, on more than one occasion, left a work shift early. Plaintiff has also failed to rebut the fact that in as early as June 19, 2014, Mr. Davies received a notice that further improper attendance issues on his part may result in termination. (Findings of Fact, supra, ¶¶ 13, 14, 15, 21).

10. Further, the Court finds that Mr. Davies was terminated for reasons entirely unrelated to his attorney's letter on May 20, 2015 requesting an accommodation for Mr. Davies' diabetes. There is no evidence on the record that the request was a factor in the decision to terminate Mr. Davies' employment. In fact, the uncontroverted documentary evidence shows that Mr. Davies received a notice of a hearing to discuss his attendance issues on May 18, 2015, two days before he submitted a request for accommodation.

11. The Court credits McAndrew's testimony that the reason for the May 18, 2015 notice was to conduct a hearing to discuss Mr. Davies' pattern of leaving work early, including the incident of May 15, 2015, when he left his shift for the stated reason of caring for his wife, which did not appear to be the case when his coworkers found him in a field, after he sent an alarming text message to Deputy Bryanna Gifford. (Findings of Fact, supra, ¶¶ 5-9, 15, 21).

12. Thus, the evidence indicates that Defendants initiated disciplinary proceedings against Mr. Davies prior to, and wholly apart from, his request for an accommodation

for his diabetes. Plaintiff has not established the requisite nexus between the request for accommodation and the adverse action against Mr. Davies.

13. Finally, the Court notes that the timing of Mr. Davies' attorney's letter is circumstantially suspect. It was sent two days after Mr. Davies received notice that he was potentially subject to discipline or discharge, and he had never requested an accommodation for his diabetes before that time. These facts suggest that the request was an attempt to create a spurious factual basis for a claim of retaliation, in the event that Mr. Davies would be disciplined for the events of May 15, 2015. The request was made after disciplinary proceedings were in motion, therefore it cannot form the basis for a finding of retaliatory motive. *See e.g. Lassiter v. Children's Hosp. of Philadelphia,* 131 F. Supp. 3d 331, 351 (E.D. Pa. 2015) ("When an employee requests an accommodation only after it becomes clear that an adverse employment action is imminent, such a request can be too little, too late. The ADA does not mandate that an employer excuse an employee's previous misconduct, even if it was precipitated by his or her disability.") (citing *Jones v. Nationwide Life Ins. Co.,* 696 F.3d 78, 90 (1st Cir.2012); *Phillips v. Ctr. for Vision Loss,* 2017 WL 839465, at *14 (M.D. Pa. Mar. 3, 2017) (noting that plaintiff's request for accommodation "was not sent until after Yingling decided to terminate Plaintiff for her poor work performance and attitude...This prospective accommodation request does not excuse Plaintiff's past misconduct."); *Scarborough v. Cent. Bucks Sch. Dist.,* 632

F. App'x 80, 83 (3d Cir. 2015) (affirming district court's denial of motion for a new

trial, and noting that "it appears that [plaintiff] was disciplined for his performance

prior to filing the internal complaint," and that "a jury could reasonably find that the

disciplinary actions taken against [plaintiff] were the direct result of his poor

performance and insubordination, not the filing of his internal discrimination

complaint").

14. The Court finds that Mr. Davies' attorney's letter cannot be used to create a *post hoc*

illusion that the disciplinary proceedings against Mr. Davies, which had already been

initiated, were in any way motivated by retaliation for his request for an

accommodation. Thus, the Court finds that any actions taken by Sheriff McAndrew

against Mr. Davies were unrelated to, and not caused by, the request for

accommodation for his diabetic condition.

## V. CONCLUSION

For the foregoing reasons, the Court will enter judgment in favor of Defendants

Lackawanna County and Mark McAndrew, and against Plaintiff, Thomas W. Davies, on

Plaintiff's retaliation claim under the ADA and the PHRA. A separate entry of Judgment

follows.

Robert D. Mariani
United States District Judge

12